# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                                           )
ANDREW WINTERS,                          )
                                                           )
          Plaintiff,                        )
                                                           )
    v.                                                  )          Civil Action No. 14-2079 (ABJ)
                                                           )
UNITED STATES AGENCY FOR            )
INTERNATIONAL DEVELOPMENT,      )
                                                           )
          Defendant.                      )
_____)

## MEMORANDUM OPINION

      Plaintiff Andrew Winters, who is proceeding *pro se*, is a former employee of defendant United States Agency for International Development ("USAID").  He claims that he was discriminated against based on his age and was constructively discharged in retaliation for exercising his "federally protected workplace rights."  Am. Compl. [Dkt. # 5] ¶ 4.1.  In addition, plaintiff asserts claims under the Privacy Act, 5 U.S.C. § 552a, and state law claims for invasion of privacy and intentional infliction of emotional distress.  *Id.* ¶¶ 4.2, 6.2.  Defendant has moved to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, or for summary judgment under Rule 56.  Def.'s Mot. to Dismiss, or in the Alternative, for Summ. J. [Dkt. # 7] ("Def.'s Mot.").  Plaintiff has opposed the motion, Pl.'s Mem. in Opp. to Def.'s Mot. [Dkt. # 11] ("Pl.'s Opp."), defendant has replied, Def.'s Reply in Supp. of Def.'s Mot. [Dkt. # 15] ("Def.'s Reply"), and plaintiff has filed a surreply.  Pl.'s Surreply & Mem. of P. & A. [Dkt. # 18].

      Upon consideration of the parties' submissions and the entire record, the Court will deny defendant's Rule 12(b)(1) motion to dismiss, because it is satisfied from plaintiff's invocation of federal statutes that it has subject matter jurisdiction.  However, for the reasons explained below,

the Court will grant defendant's Rule 12(b)(6) motion to dismiss the majority of plaintiff's claims as barred by the settlement agreement he signed as part of his retirement, and it will grant defendant's motion for summary judgment with regard to plaintiff's remaining age discrimination claim.  Thus, this case will be dismissed in its entirety.

## BACKGROUND

It is undisputed that on January 23, 2005, at age fifty-six, plaintiff joined USAID "as a career candidate for the Foreign Service," and he worked for the agency until he retired on February 28, 2010.  Am. Compl. ¶ 5.1; Pl.'s Opp. at 1.  The amended complaint sets forth a number of grievances based on the following account of plaintiff's five years at the agency:

## I.    Work History and Environment

On the date he was hired, plaintiff entered the New Entry Professional Program, which is a training program for Foreign Service Officers.  Once a supervisor notifies the Office of Human Resources ("OHR") that the trainee has completed the program, OHR will typically appoint the trainee to an office overseas for two years or more.  But that process took some time in this case. On May 3, 2005, plaintiff's supervisor, Ms. Leddy, "told him he should seek work outside of USAID," and that comment launched a hostile relationship between plaintiff and that supervisor. Am. Compl. ¶ 5.5.  As part of the training program, plaintiff eventually secured a rotational assignment within the Latin America and Caribbean Bureau working under a different supervisor, Dick Loudis.  *Id.* ¶ 5.6.  On May 17, 2005, Loudis allegedly told plaintiff that "he was 'too old to begin a career at USAID,'" and other supervisory personnel made similar remarks to plaintiff.  *Id.* Loudis also stated to plaintiff:  "You have it hard at your age trying to learn all this new stuff."  *Id.* ¶ 5.7.  Plaintiff completed the training requirements by January 2007, and on June 29, 2007, more than two years after his hire date, plaintiff "was finally informed by OHR of his first permanent

[two-year] assignment overseas, to Tegucigalpa, Honduras."  Plaintiff was the last of his forty-six classmates to have been assigned an overseas post.  *Id.* ¶ 5.11.

Plaintiff began working at the USAID/Honduras' Program Office on September 24, 2007. In December 2007, plaintiff's wife fell ill with "abdominal pain" and was evacuated to the District of Columbia.  According to plaintiff, despite the "physical [ ] nature" of the illness, "the Medical Unit in Honduras, for reasons unknown to [plaintiff], came to the conclusion that they were psychological."  Am. Compl. ¶¶ 5.12–5.14.  In addition to "sharing its medical conclusions . . . with those who might have a need to know," the Medical Unit "told the Community Liaison Officer (CLO) at post that it believed Mrs. Winters to be mentally unstable."  *Id.* ¶ 5.17.  The CLO then "proceeded to disseminate [that] information to the general community of official Americans at post."  *Id.* ¶ 5.18.  Meanwhile, in the District of Columbia, the State Department's social worker assigned to Mrs. Winters's case "talked freely about [her] medical condition" with staff in Honduras "who had no need to know," without first obtaining permission from Mrs. Winters or the plaintiff.  *Id.* ¶ 5.20.

Eventually, Mrs. Winters was diagnosed with endometriosis by a private doctor, and she was "successfully" treated for that ailment.  Am. Compl. ¶ 5.22.  The State Department's Office of Medical Services nevertheless declined to clear Mrs. Winters to return to Honduras through the spring and summer of 2008.  *See id.* ¶ 5.15 ("Under the Foreign Service Act, employees and their family members must submit to medical evaluations to determine their suitability for the particular post to which the employee is assigned.").  Plaintiff returned to the District "on temporary duty." *Id.* ¶ 5.25.  In March 2008, his then-supervisor, Mr. North, advised plaintiff that he would "get a really small pension" because of the short time he had to work before he would be obliged to retire because of his age, among other "disparaging and age-related remarks."  *Id.* ¶¶ 5.26–5.27.

Upon returning to Honduras, plaintiff had a discussion on May 29, 2008 with an investigator from the State Department's Office of the Inspector General ("OIG") who was investigating complaints about the Embassy Medical Office.  Am. Compl. ¶¶ 5.28–5.29.  Plaintiff "complained that the State Department's 'Class II' medical clearance for his wife was issued wrongfully and that her 'Class I' clearance was being wrongfully withheld because all doctors outside the State Department who had examined her gave her a clean bill of health – yet the Department's Medical Office continued to refuse to revise her clearance and continued to insist that she had a psychological disorder for which there was no medical evidence."  Id. ¶ 5.30.  In October 2008, the State Department issued a report about the OIG's visit, which, according to plaintiff, listed as major problems "substandard treatment provided by local consultants, repeated examples of incorrect diagnoses by medical consultants that on occasion have led to unnecessary treatment, [and] failure to adequately treat obvious medical problems."  Id. ¶ 5.31.

## II.   Proposed Performance-Based Termination

In a letter dated June 25, 2008, plaintiff was informed "that his performance did not meet the standards of his class," Am. Compl. ¶ 5.32, despite the fact that in three evaluations covering the years 2005 through 2008, plaintiff "was rated as meeting all work objectives and skill standards for his class" and was never warned or counseled "about [deficient or] poor performance or anything else even remotely negative."  Id. ¶¶ 5.33–5.35.  On August 4, 2008, plaintiff was informed of his termination for "performance not meeting the standards of his class and failure to obtain tenure."  Id. ¶ 5.39.  Plaintiff filed a grievance on October 22, 2008 challenging his dismissal, and he was granted interim relief on December 1, 2008, "in the form of continued employment in pay status pending the final outcome of his grievance."  Id. ¶ 5.40.  On September

24, 2009, plaintiff received a letter from Deputy Assistant Administrator for Human Resources Deborah Iraheta-Kennedy, informing that he had prevailed on his grievance. *Id.* ¶¶ 5.49–5.50.

### III.   Proposed Termination for Cause and Settlement Discussions

In August 2009, USAID conducted an audit of the workplace turnstiles that record the times employees enter and leave USAID headquarters.  According to plaintiff, his "turnstile records were examined, but no other employee's records were examined."  Am. Compl. ¶ 5.53. "USAID then alleged that [plaintiff] was out of the work area for several unauthorized periods between January 4, 2009 and August 15, 2009," and it issued a Proposed Notice of Removal, stating its intention to terminate plaintiff for cause. *Id.* ¶ 5.54–5.55 & n.11.  Plaintiff responded in writing to the notice, but Iraheta-Kennedy did not reply. *Id.* ¶ 5.55.  Plaintiff admits that "[l]ike many other employees, . . . [he] was . . . out of the work area at some periods during the working hours surveyed, including [for] consultations regarding his wife's medical clearance at Main State, and work related trips to the USAID library . . . to attempt to keep current with news and developments in his field." *Id.* ¶ 5.56.

On November 12, 2009, plaintiff was told by a representative of the American Foreign Service Association ("AFSA"), Doug Broome, that USAID would expunge the allegations of wrongdoing if plaintiff agreed to retire early – "after his 62nd birthday, February 19, 2010 . . . and to not pursue any legal remedies he may have against USAID."  Am. Compl. ¶ 5.60.  Plaintiff told Broome "clearly that he did not want to sign such an agreement," but Broome "strongly pressured" plaintiff during meetings on November 17 and November 24, 2009, "to retire immediately in lieu of separation for cause." *Id.* ¶¶ 5.61–5.62.  Although plaintiff rejected the proposal during the meetings, he "ultimately acquiesced to extreme pressure by the Agency and AFSA and signed the early retirement agreement on December 18, 2009." *Id.* ¶ 5.64.  Plaintiff made clear to the Agency

and AFSA "that his agreement to retire was coerced and that he agreed to it because, based on advice from his doctors, his medical condition would not allow him to endure further abuse from USAID." *Id.* ¶ 5.64.  Under the terms of the settlement agreement, plaintiff "agreed to forfeit his right of legal action against USAID." *Id.* ¶ 5.65; *see also* Ex. 2 to Def.'s Mot. [Dkt. # 7-2] (Dec. 18, 2009 Settlement Agreement between USAID and Andrew Winters) ("Settlement Agreement").[1]

On December 17, 2009, the day before he signed the Settlement Agreement, plaintiff spoke with an Equal Employment Opportunity ("EEO") counselor, Janet Allem, and allegedly conveyed his belief that he was being subjected to retaliation "because he had filed a grievance over his illegal dismissal," and to discrimination due to his age.  Am. Compl. ¶ 5.59.  Plaintiff subsequently received an email from Allem "indicating that the Agency's EEO office would not take up his case" because her supervisor, EEO Office Director Jessalyn Pendarvis, "would not permit her to help" plaintiff.  *Id.*

Plaintiff retired on February 28, 2010, at age sixty-two, and he has been "receiv[ing] retirement annuity payments from USAID."  Am. Compl. ¶¶ 5.66–5.67.

### IV.    Post-Grievance/Settlement Work Environment

Plaintiff's allegations also cover the time period before his retirement became final.  He alleges that between December 1, 2008, and February 26, 2010, he was assigned to OHR and

---

1       Because plaintiff incorporated the Settlement Agreement by reference in the amended complaint, *see* Am. Compl. ¶¶ 5.64–5.65, 5.68–5.69, the Court may consider it in ruling on defendant's Rule 12(b)(6) motion to dismiss. *See, e.g.*, *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (noting that, in ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice"), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

supervised by Maria Margliano, who gave him "exactly two work assignments" that took him less than one week to complete.  Am. Compl. ¶¶ 5.42–5.43.  During that nearly fifteen-month period, plaintiff's work station "was a bench facing a wall in an open hallway where there was a computer terminal."  *Id.* ¶ 5.44.  OHR "actively blocked" plaintiff's efforts to secure work assignments outside of that office "in an effort to punish him," and it informed plaintiff on June 22, 2009, that he was being assigned to Nigeria, knowing that his wife "would not be able to accompany [him] . . . because of her medical clearance status."  *Id.* ¶¶ 5.46–5.47.  That decision was made without "counseling" plaintiff as per USAID regulations.  *Id.* ¶ 5.48.  Plaintiff unsuccessfully appealed the assignment to Nigeria.  *See* Attachs. to Compl. [Dkt. # 1] at 24–30.  But he was informed by letter dated October 26, 2009, that he had not been medically cleared for that assignment in any event.  *Id.* at 30.

Plaintiff is deemed to have filed this civil action arising out of all of those circumstances on September 10, 2014, the date the Clerk received his complaint and *in forma pauperis* application.  His claims, set out in section six of the Amended Complaint, are captioned as follows:

- 6.1 District of Columbia common law:  Invasion of Privacy.

- 6.2 District of Columbia common law:  Intentional Infliction of Emotional Distress.

- 6.3 The Privacy Act of 1974.

- 6.4 Retaliation for the exercise of a protected workplace right.

- 6.5 Age Discrimination.

- 6.6 Violation of Older Workers Benefit Protection Act.

Plaintiff seeks back pay, compensatory and punitive damages, and declaratory relief.  Am. Compl. ¶ 7.

## STANDARD OF REVIEW

### I.     Motion to Dismiss

In evaluating a motion to dismiss under Rule 12(b)(6), the court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (citations omitted).  Where the action is brought by a *pro se* plaintiff, a district court has an obligation "to consider his filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014), citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).  Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.  *See Kowal*, 16 F.3d at 1276.

In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

### II.     Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

A motion to dismiss must be treated as a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court."  Fed. R. Civ. P. 12(d); se*e also Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003) (holding that district court's consideration of matters outside the pleadings converted the defendant's Rule 12 motion into one for summary judgment).

## ANALYSIS

Defendant argues that the claims forming the basis of this action were waived in the Settlement Agreement.  *See* Mem. in Supp. of Def.'s Mot. [Dkt. # 7] ("Def.'s Mem.") at 7.  The Court agrees as to all but the age discrimination claim, but that claim also fails because the record shows that plaintiff did not exhaust his administrative remedies.

In the Settlement Agreement, the agency agreed to suspend further action on the proposed notice of removal for cause, expunge all documents pertaining to the proposed removal, and treat plaintiff's separation as a voluntary retirement upon plaintiff's submission of his application for early retirement effective February 28, 2010. *See* Settlement Agreement at 1. Under the terms of that agreement though, plaintiff agreed to report to work full time and to complete work assigned by his supervisor in the interim. *Id.* at 2. His non-compliance would have resulted in his termination prior to February 28, 2010, and the waiver of "all rights to contest such immediate termination in any administrative or court proceeding." *Id.*

Paragraph IIIA of the Settlement Agreement provides:

> That all claims that the employee may have against the agency, up to and including the effective date of this agreement, shall stand as settled in full; and no matters, raised or unraised, may for the basis of any grievances, legal complaint, or any adjudicative proceeding before the agency, the Foreign Service grievance Board, or any court of law or any other forum; and that the agency has no further liability with regard to any claims before the effective date of this agreement; provided, however, that nothing herein shall preclude the employee from asserting in a grievance that the agency failed to comply with the terms of the agreement[.]

*Id.* Plaintiff carried out the terms of the agreement by working and then retiring on the agreed-upon date, and he has been collecting his annuity payments. Accordingly, pursuant to Rule 12(b)(6), plaintiff's common law claims, retaliation claim (predicated on his successful grievance of the performance-based dismissal notice), and Privacy Act claim must be dismissed under the terms of the Settlement Agreement.[2]

Plaintiff argues that he did not enter into the Settlement Agreement voluntarily, and he maintains that the agreement is unenforceable under the Older Workers Benefit Protection Act

---

2   Consequently, the Court need not address defendant's arguments that the same claims are barred as untimely, and that plaintiff has not stated a claim under the Privacy Act or a claim of retaliation under the Whistleblower Protection Act. *See* Def.'s Mem. at 7–9, 11–14.

("OWBPA"), encompassed within the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.* Pl.'s Opp. at 12–13. "Congress enacted the OWBPA, which, among other things, amended certain provisions of the ADEA to establish more stringent requirements for agreements waiving employee rights." *Newman v. D.C. Courts*, 125 F. Supp. 3d 95, ---, 2015 WL 5118513, at *1 (D.D.C. 2015).

Under the OWBPA,

a waiver [of any claim or right] may not be considered knowing and voluntary unless at a minimum –

(A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;

(B) *the waiver specifically refers to rights or claims arising under this chapter*;

(C) the individual does not waive rights or claims that may arise after the date the waiver is executed;

(D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;

(E) *the individual is advised in writing to consult with an attorney prior to executing the agreement*;

(F)(i) the individual is given a period of at least 21 days within which to consider the agreement; . . .

(G) *the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired*[.]

29 U.S.C. § 626(f)(1) (emphases added).

The Court agrees with plaintiff that the Settlement Agreement does not comport with the three highlighted requirements. It does not explicitly mention ADEA rights and provide for the

seven-day cooling off period, and plaintiff states that he was not "advised in writing or orally to consult with an attorney prior to the signing of the agreement." Pl.'s Opp. at 13. Defendant has proffered no evidence to the contrary. Consequently, plaintiff cannot be deemed to have voluntarily waived his age discrimination claim.

Nevertheless, before filing suit under the ADEA, a federal employee must meet certain requirements. He "may bring a claim directly to federal court so long as, within 180 days of the allegedly discriminatory act, he provides the EEOC with notice of his intent to sue at least 30 days before commencing suit." *Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003), citing 29 U.S.C. § 633a(c), (d). Upon receiving such notice, "the Commission shall promptly notify all persons named therein as prospective defendants . . . and take any appropriate action to assure the elimination of any unlawful practice." 29 U.S.C. § 633a(d). Alternatively, the employee may "invoke the EEOC's administrative process, and then sue if dissatisfied with the results." *Rann*, 346 F.3d at 195, citing 29 U.S.C. § 633a(b), (c), and *Stevens v. Dep't of Treasury*, 500 U.S. 1, 5–6 (1991).

A federal employee's charge with the EEOC must be lodged within 180 days of the alleged discriminatory act. 29 U.S.C. § 626(d)(1)(A). "The administrative charge requirement serves the important purposes of giving the charged party notice of the claim and 'narrow[ing] the issues for prompt adjudication and decision.'" *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995), quoting *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 472 n.325 (D.C. Cir. 1976). And a subsequent lawsuit is typically "limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Id.*, quoting *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

Here, the record shows that plaintiff has failed to exhaust his administrative remedies with regard to his age discrimination claim, and defendant is entitled to judgment as a matter of law on this issue. Plaintiff admits that he did not satisfy the "formal requirements" for exhaustion, Pl.'s Opp. at 16, and he does not contend that he satisfied the requirements for bypassing the administrative process and suing directly in federal court. Rather, plaintiff maintains that he substantially complied with the exhaustion requirement when he "approached an agency EEO counselor" in August 2008 and in December 2009 "to complain about age based discrimination and retaliation." *Id.* He then argues that defendant "should be estopped from asserting the [exhaustion] defense . . . because it gave plaintiff incorrect and misleading information about the EEO process, as it did not advise him of his right to file a formal EEO complaint." *Id.* at 18.

In response, defendant points to the agency's September 11, 2008 Memorandum to plaintiff from the EEO Counselor with the subject line "Notice of Right to File a Discrimination Complaint," which explains plaintiff's right to file a discrimination complaint, and the process for doing so. Ex. 5 to Def.'s Mot. [Dkt. # 7-5]. The Memorandum was transmitted in the wake of plaintiff's informal complaint in August 2008, when he did convey his belief that his age had factored into the Tenure Review Board's proposal to terminate him for performance reasons. *See* Ex. 4 to Def.'s Mot. [Dkt. # 7-4]. Plaintiff does not dispute that he did not pursue his rights then, *see* Decl. of Jacqueline A. Canton, Ex. 3 to Def.'s Mot. [Dkt. # 7-3], and his successful grievance of the Tenure Review Board's proposal defeats any claim arising from those events, since plaintiff continued to work at the same pay status and he has not claimed that he suffered a cognizable adverse consequence. Am. Compl. ¶ 5.51 ("USAID's efforts to force Mr. Winters to resign were unsuccessful to this point [September 24, 2009]."); *see also Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002) ("[A]n employee suffers an adverse employment action if he experiences

materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.").

Plaintiff argues, though, that his age discrimination claim may proceed since the agency failed to give him similar advice in 2009.  But as defendant points out, there is no record of plaintiff's alleged contact with an EEO counselor in December 2009.  *See* Def.'s Reply at 6.  More important, plaintiff's sworn account of the alleged meeting in 2009 belies any suggestion that what he complained about at that time was age discrimination and that therefore, he was entitled to another rights notice.  Plaintiff avers:

> In point of fact, on a couple of earlier occasions, I had asked Mr. Broome for his help when USAID delayed posting me and insisted that I accept menial assignments in its headquarters.  Mr. Broome's response to my requests for help was an offer to negotiate my retirement.  Nevertheless, Mr. Broome, acting as OHR's representative, pressured me to accept retirement during several meetings that occurred during the period after the meeting with Iraheta-Kennedy and D' Alessandro.  I proposed to Mr. Broome that we hold a meeting with Iraheta-Kennedy and D'Alessandro.  He claimed that Iraheta-Kennedy and D'Alessandro refused to meet with me.  Because of Mr. Broome's failure to act on my behalf, I again approached the EEO office at USAID.  I spoke with Janet Allem, a counselor who had served as a Foreign Service officer at USAID for several years.  Ms. Allem offered to arrange for mediation with Iraheta-Kennedy to discuss a negotiated settlement of the proposal for my dismissal. Within a short period of time, I received a regretful notice from Ms. Allem, telling me that her supervisor, Jessalyn Pendarvis, had told her she was not to get involved in my case and that I was "represented by AFSA."

Aff. of Andrew Winters in Supp. of Pl.'s Opp. [Dkt. # 11].  Plaintiff now concludes that he was again denied his EEO rights because "[t]he EEO office did not advise me of my right to file a formal claim according to Title VII nor did they advise me of my rights according to the Older Americans Benefit Protection Act," despite the fact that he was 61 years old at the time.  *Id.*  But plaintiff has not set forth any facts or record evidence that would relieve him of the duty to exhaust.

While it is true that the administrative exhaustion requirement may be excused for equitable reasons, the Court of Appeals has recognized "the Supreme Court's powerful cautions against application of the [equitable estoppel] doctrine to the government as normally barring its use to undercut statutory exhaustion requirements." *Rann*, 346 F.3d at 197, citing *Off. of Personnel Mgmt. v. Richmond*, 496 US. 414, 419–24 (1990) (other citation omitted); *see also ATC Petroleum, Inc. v. Sanders*, 860 F.2d 1104, 1111 (D.C. Cir. 1988) (explaining that application of estoppel "to the government must be rigid and sparing").  Thus, the D.C. Circuit has instructed:

> The case for estoppel against the government must . . . include proof of each of the traditional elements of the doctrine – "false representation, a purpose to invite action by the party to whom the representation was made, ignorance of the true facts by that party, and reliance, as well as . . . a showing of an injustice . . . and lack of undue damage to the public interest."

*ATC Petroleum*, 860 F.2d at 1111, quoting *Int'l Org. of Masters, Mates & Pilots v. Brown*, 698 F.2d 536, 551 (D.C. Cir. 1983).  "A party attempting to apply equitable estoppel against the government must show, *inter alia*, that 'the party relied on its adversary's conduct in such a manner as to change his position for the worse [and that] the party's reliance was reasonable." *Swedish Am. Hosp. v. Sebelius*, 773 F. Supp. 2d 1, 8 (D.D.C. 2011), quoting *Keating v. Fed. Energy Regulatory Comm'n*, 569 F.3d 427, 434 (D.C. Cir. 2009).

Plaintiff has made no showing that would support an application of the principles of estoppel in this case, and he has conceded that he failed to exhaust his administrative remedies with regard to the age discrimination claim.  And he has not pointed to any place in the record showing that he took any action within 180 days of the alleged discriminatory conduct – the most

generous date being his February 28, 2010 retirement date – and therefore, the age discrimination claim he filed in 2014 was untimely.[3]

## CONCLUSION

All but one of plaintiff's claims are barred by the Settlement Agreement he reached with defendant, and his remaining age discrimination claim is irrefutably unexhausted and untimely. So, defendant's motion to dismiss or for summary judgment will be granted, and this case will be dismissed.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  March 29, 2016

---

[3]     In response to defendant's untimeliness argument, plaintiff cites the Final Order of the Merit Systems Protection Board dated July 3, 2014, which he contends decided his "mixed-case appeal." Pl.'s Opp. at 13–14.  Defendant disputes that plaintiff's appeal to the Board was a mixed case, *see* Def.'s Reply at 2–3, but that dispute is not material to resolving this case.  Plaintiff has not placed the order or any documents from the MSPB proceedings in the record, but the Board's Initial Decision, which defendant has placed in the record, shows September 20, 2012, as the earliest date plaintiff initiated an action.  *See* Ex. 6 to Def.'s Mot. [Dkt. # 7-6].  And even a mixed-case appeal to the Board must comply with filing deadlines.  *See Schlottman v. Solis*, 845 F. Supp. 2d 107, 111 (D.D.C. 2012) ("[T]he mixed case appeal must nevertheless be filed within thirty days of the challenged action."), *aff'd sub nom. Schlottman v. Perez*, 739 F.3d 21 (D.C. Cir. 2014). Furthermore, the Initial Decision addresses plaintiff's Individual Right of Action, which pertains to "whistleblower reprisal cases."  *Id.* at 23.  Any such claim was covered by the Settlement Agreement and, thus, is waived.